# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| LATREISSA DARSHELLE RANDOLPH, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 17-2696-KHV |
| | ) | |
| ONE SOURCE TEMPORARY SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

LaTreissa Darshelle Randolph, pro se, brings suit against One Source Temporary Service[1] for employment discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e et seq. See Employment Discrimination Complaint (Doc. #1) filed December 11, 2017. This matter comes before the Court on Defendant Labor Source, LLC's Motion For Summary Judgment (Doc. #13) filed March 5, 2018 and Defendant Labor Source, LC's Motion To Strike Plaintiff Latreissa Randolph's Notice Or, In The Alternative, Motion For A More Definite Statement (Doc. #21) filed April 3, 2018.[2] For reasons stated below, the Court overrules both motions.

---

[1] Defendant asserts that its correct name is Labor Source, LLC dba One Source Staffing and Labor. See, e.g., Defendant Labor Source, LLC's Motion For Summary Judgment (Doc. #13) at 1 n.1.

[2] It appears that plaintiff has not filed a response to either motion. Under D. Kan. Rule 7.4(b), a party who fails to timely file a responsive brief or memorandum waives the right to later do so, and the Court will consider and decide the motion as uncontested and ordinarily will grant the motion without further notice. D. Kan. Rule 7.4(b). A party's failure to respond to a summary judgment motion, however, is not by itself a sufficient basis on which to enter judgment. Reed v. Bennett, 312 F.3d 1190, 1195 (10th Cir. 2002). Rather, the Court must determine whether judgment for the moving party is appropriate under Rule 56, Fed. R. Civ. P. Id. Here, it appears that the document which defendant seeks to strike may constitute plaintiff's response to defendant's summary judgment motion. Accordingly, the Court addresses the merit of both motions.

**I.      Procedural Background**

On December 11, 2017, plaintiff filed her pro se complaint alleging employment discrimination and retaliation in violation of Title VII. See Doc. #1.

On March 5, 2018, defendant filed its motion for summary judgment. See Doc. #13. Pursuant to D. Kan. Rule 6.1(d)(2), plaintiff had 21 days – or until March 26, 2018 – to file a response to the motion. See D. Kan. Rule 6.1(d)(2).

Also on March 5, 2018, pursuant to D. Kan. Rule 56.2(f), defendant served plaintiff with a Notice To Pro Se Litigant Who Opposes A Motion For Summary Judgment (Doc. #15). The notice advised plaintiff that to avoid the Court dismissing her claims and entering judgment in favor of defendant, she must timely respond to the motion by filing sworn affidavits and other documents as required by Rule 56(c), Fed. R. Civ. P. and D. Kan. 56.1. See id. at 1-2. Along with the notice, defendant provided copies of the full text of Rule 56(c) and D. Kan. 56.1. See Exhibits A and B to Notice (Doc. #15).

The next day, Magistrate Judge James P. O'Hara held a scheduling conference. See Doc. #16 filed March 6, 2018. Plaintiff appeared in person and defendant appeared through counsel. See Scheduling Order (Doc. #17) filed March 6, 2018 at 1. Following the conference, Judge O'Hara set the following deadlines: (1) March 20, 2018, plaintiff to serve Rule 26(a)(1) disclosures regarding witnesses, exhibits and damage computations;[3] (2) April 5, 2018, parties to submit confidential settlement reports; (3) May 7, 2018, mediation; (4) July 6, 2018, discovery to be

---

[3]     At the time of the scheduling conference, defendant had already served its initial disclosures. See Scheduling Order (Doc. #17) at 4.

complete; (5) July 13, 2018, parties to submit proposed pretrial order; and (6) April 15, 2019, trial. See Scheduling Order (Doc. #17) filed March 6, 2018 at 4, 10.

On March 20, 2018, plaintiff filed a six-page document titled "Unfair Labor Practices." Notice ( Doc. #18). The first page of the document lists allegations regarding defendant's labor practices. See id. at 1. To the document, plaintiff attached her affidavit and documents which appear to be her handwritten notes regarding allegations in the case. See id. at 2-6.

On March 28, 2018, plaintiff filed a motion to extend the time to respond to defendant's motion for summary judgment.[4] See Doc. #19.

On April 3, 2018, defendant filed a response which opposed extending the time for plaintiff' to respond. See Defendant Labor Source, LLC's Response To Plaintiff Latreissa Randolph's Motion For Extension Of Time (Doc. #20). Defendant asserted that plaintiff had filed the motion after the response deadline passed and did not show cause and excusable neglect for the delay. See id. at 1-3.

On April 6, 2018, the Court sustained plaintiff's motion and extended to April 20, 2018, the time for her to respond to defendant's summary judgment motion.[5] See Memorandum And Order (Doc. #23) at 2.[6] The Court noted that plaintiff did not meet the requirements of

---

[4] As noted, plaintiff's response was due March 26, 2018.

[5] Plaintiff also asked the Court to schedule a meeting or hearing but did not state the purpose or need for her request. See Doc. #19. The Court denied the request. See Memorandum And Order (Doc. #23) filed April 4, 2018 at 2.

[6] The Clerk's Office sent plaintiff the memorandum and order by regular and certified mail to the address listed on plaintiff's complaint and the Court's docket sheet, i.e. 3617 Oakland Avenue, Kansas City, Kansas 66102. See Docs. #1, #27 and docket text entry regarding Doc. #23. On May 2, 2018, the Court received the certified mail envelope marked "return to sender," "unclaimed" and "unable to forward." Doc. #27. Pursuant to D. Kan. Rule 5.1(c)(3), plaintiff must notify the Clerk in writing of any change of address or telephone number and any notice mailed to the last address of record constitutes sufficient notice. D. Kan. Rule 5.1(c)(3).

D. Kan. Rule 56.1(a), i.e. she did not file the motion before the response time had expired and did not show excusable neglect for her failure to do so. See id. The Court nevertheless granted the extension, noting that plaintiff had filed the motion only two days late and that plaintiff had previously followed Court procedural rules. See id. The Court cautioned plaintiff that with regard to future filings, it would not tolerate failure to follow Court procedural rules, including the Federal Rules of Civil Procedure and the District of Kansas Rules of Practice and Procedure. See id. at 3. In addition, the Court advised that with regard to defendant's motion for summary judgment, plaintiff should carefully review the Notice To Pro Se Litigant Who Opposes A Motion For Summary Judgment (Doc. #15) and exhibits thereto.[7] See Memorandum And Order (Doc. #23) at 3. The Court stated that failure to timely file a response or comply with the requirements of Rule 56 and D. Kan. Rule 56.1 would "likely result in the Court without further notice sustaining defendant's motion and granting judgment in favor of defendant on all of plaintiff's claims." Memorandum And Order (Doc. #23) at 3-4.

The same day, April 6, 2018, Judge O'Hara entered an order which vacated the mediation deadline of May 7, 2018. See Order (Doc. #22) filed April 6, 2018.[8] Judge O'Hara stated that (1) he had read the confidential settlement report which defendant had submitted; (2) plaintiff did not submit a confidential settlement report; and (3) it did not appear that mediation would be productive unless and until plaintiff's claims survived defendant's pending summary judgment motion. See id.

---

[7] As noted, the exhibits contain the text of Rule 56, Fed. R. Civ. P., and D. Kan. Rule 56.1. See Exhibits 1 and 2 to Notice (Doc. #15).

[8] Judge O'Hara's order is by text entry. See Order (Doc. #22). The Clerk's Office sent plaintiff the order by regular mail. See id.

On April 19, 2018, Judge O'Hara entered an order noting that plaintiff had apparently submitted a partial confidential settlement report and request for extension of time to complete her settlement report.[9] See Doc. #24.[10] He found that he had already vacated the mediation deadline and denied as moot plaintiff's request to extend the time to complete her settlement report.[11] See id.

On May 17, 2018, plaintiff filed a one-page document titled "Motion To Amend." Doc. #28. In the first paragraph, plaintiff alleged that "Hosea," a staff person for defendant, said he would send her on a job assignment and then backed out. See id. Plaintiff alleged that Hosea and "Rome," a lead person employed by defendant, allowed employees to remove plaintiff from a work ticket without giving a reason. See id. In the second paragraph, plaintiff asked that the Court require

---

[9] The next day, April 20, 2018, Judge O'Hara entered an Order (Doc. #25) which noted that pursuant to the scheduling order, plaintiff had submitted her partial confidential settlement report and request for extension of time by email and did not file the documents. See id. He stated as follows:

> The court has directed the clerk's office to advise plaintiff that if any documents included in her attempted filing were not intended in support of her partial confidential settlement report (and instead, e.g., in the context of defendant's pending summary judgment motion [Doc. #13]), plaintiff should file those documents as a separate entry.

Doc. #25. On April 20, 2018, the Clerk's Office contacted plaintiff by telephone and advised her that "if any documents included in her previous attempted filing were not intended in support of her partial confidential settlement report that she needed to re-file them." Internal docket entry (Court only) dated April 20, 2018.

[10] Judge O'Hara's order is by text entry. See Doc. #24. The Clerk's office sent plaintiff the order by regular mail. See id.

[11] Judge O'Hara also ruled that to the extent plaintiff requested a hearing to discuss her health, the request was denied. See Doc. #24.

defense counsel to provide the full names of employees who allegedly discriminated against her. See id.

On May 24, 2018, defendant responded to plaintiff's motion. See Defendant Labor Source, LLC's Response To Plaintiff Latreissa Randolph's Motion To Amend (Doc. #29). To the extent plaintiff sought leave to amend her complaint to add new allegations, defendant did not object. See id. at 2. To the extent plaintiff sought to compel discovery, defendant objected on grounds that it could not identify the individuals whom plaintiff referenced and that plaintiff had not served proper discovery requests. See id.

On May 24, 2018, Judge O'Hara entered an order regarding plaintiff's motion. See Order (Doc. #30).[12] To the extent plaintiff sought discovery, he overruled the request, finding that plaintiff could obtain information and documents by serving discovery requests pursuant to Rules 33 and 34, Fed. R. Civ. P. See id. To the extent plaintiff sought leave to amend her complaint, he ruled that pursuant to D. Kan. Rule 15.1, on or before June 1, 2018, she must file a proposed amended complaint as an exhibit to her motion. See id. Plaintiff did not file a proposed amended complaint by June 1, 2018. On June 4, 2018, Judge O'Hara entered an order which denied without prejudice her motion to file an amended complaint. See Order (Doc. #33).[13]

---

[12] Judge O'Hara's order is by text entry. See Doc. #25. The Clerk's Office sent plaintiff the order by regular and certified mail. See id. On June 22, 2018, the Court received the certified mail envelope marked "return to sender," "unclaimed" and "unable to forward." Doc. #34.

[13] Judge O'Hara's order is by text entry. See Doc. #33. The Clerk's Office sent plaintiff the order by regular and certified mail. See id. On July 6, 2018, the Court received the certified mail envelope marked "return to sender," "unclaimed" and "unable to forward." Doc. #37.

On June 28, 2018, defendant filed a motion asking the Court to extend the discovery deadline to 30 days after the Court ruled on its summary judgment motion. See Defendant Labor Source, LLC's Motion To Extend Discovery Deadline And Continue Pre-Trial Conference (Doc. #35) at 3-4. In addition, defendant asked the Court to continue the date of the pretrial conference and deadline to submit a proposed pretrial order.[14] See id.

On June 29, 2018, Judge O'Hara entered an order which expedited the briefing deadlines for defendant's motion. See Order (Doc. #36).[15] Under the expedited briefing schedule, plaintiff's response was due July 6, 2018. See id. Plaintiff did not file a response.

On July 9, 2018, Judge O'Hara entered an order which sustained defendant's motion and (1) extended the discovery deadline to 30 days after the Court ruled on defendant's motion for summary judgment; (2) vacated the deadline for the parties to submit a proposed pretrial order; and (3) cancelled the status conference set for July 24, 2018. See Order (Doc. #38).[16]

**II.  Motion To Strike (Doc. #21)**

Defendant urges the Court to strike the six-page document titled "Unfair Labor Practices" which plaintiff filed on March 20, 2018, i.e. Doc. #18. The first page of the document lists the following "unfair labor practices:"

---

[14]    As noted, the deadline to submit a proposed pretrial order was July 13, 2018, and the Court planned to hold a pretrial conference on July 24, 2018. Scheduling Order (Doc. #17) at 10.

[15]    Judge O'Hara's order is by text entry. See Doc. #36. The Clerk's Office sent plaintiff the order by certified mail. See id. On July 6, 2018, the Court received the certified mail envelope marked "return to sender," "unclaimed" and "unable to forward." Doc. #37.

[16]    Judge O'Hara's order is by text entry. See Doc. #38. The Clerk's Office sent plaintiff the order by certified mail. See id. Plaintiff signed the return certified mail receipt. See Doc. #39 filed July 19, 2018.

1. One Source failed to carry out the first come first serve practice of sending people out on jobs.

2. Company Agent Rios worked against us by tearing out walls on a job in St. Louis unecessarily [sic] causing more work for us.

3. Company Agent Rios chided us for just talking to another cleaning team while in St. Louis.

4. Not getting issues resolved when going to the boss in KC on problems I was having with Rios.

5. Having some of us set [sic] around wasting our time while all the time knowing we weren't going to go out.

6. Some workers obviously getting preferential treatment over others (in a discriminating manner).

7. I was taking [sic] off a ticket to work, me and my friend Terry Stricklen, to [retaliate] against me. (La Treissa Randolph)

Doc. #18 at 1. As noted, the document includes (1) plaintiff's affidavit and (2) documents which appear to be her handwritten notes regarding allegations in the case. See Doc. #18.

Defendant urges the Court to strike plaintiff's filing under Rule 12(f), Fed. R. Civ. P. See Motion To Strike (Doc. #21) at 3-4. Pursuant to Rule 12(f), the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).[17] Striking material from a pleading is a disfavored remedy. Nwakpuda v.

---

[17] Rule 12(f) states as follows:

The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:
(1) on its own; or
(2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

(continued...)

Falley's, Inc., 14 F. Supp.2d 1213, 1215 (D. Kan. 1998). The Court should decline to do so unless the allegations (1) have no possible relation to the controversy and (2) may prejudice one of the parties. Sunlight Saunas, Inc. v. Sundance Sauna, Inc., 427 F. Supp.2d 1022, 1029 (D. Kan. 2006). Any doubt as to the utility of the material to be stricken should be resolved against the motion to strike. Nwakpuda, 14 F. Supp.2d at 1215. The purpose of Rule 12(f) is to minimize delay, prejudice and confusion by narrowing the issues for discovery and trial. Stubbs v. McDonald's Corp., 224 F.R.D. 668, 676 (D. Kan. 2004).

As a preliminary matter, the Court notes that the document which defendant seeks to strike is not a pleading. Defendant acknowledges that by its terms, Rule 12(f) applies to "pleadings." Fed. R. Civ. P. 12(f); see Motion To Strike (Doc. #21) at 3 n.11. Defendant asserts that authority exists "for granting motions to strike under circumstances similar to these," but does not cite any such authority. Motion To Strike (Doc. #21) at 3 n.11.

Defendant asserts that the Court should strike plaintiff's filing because it is immaterial and impertinent. See Motion To Strike (Doc. #21) at 4. Defendant asserts that the filing does not constitute a response to its motion for summary judgment because it does not address arguments contained in the motion and does not respond to the statement of undisputed facts. See id. at 2-3. In light of plaintiff's pro se status, and because plaintiff filed the document within the time allowed to respond to the summary judgment, the Court will consider its contents in evaluating the merit of defendant's summary judgment motion, infra. See, e.g., Nwakpuda, 14 F. Supp.2d at 1215 (court should resolve any doubt as to utility of material against motion to strike).

---

[17](...continued)
Fed. R. Civ. P. 12(f).

Defendant asserts that the filing does not constitute Rule 26 disclosures because it does not contain a list of witnesses as required under Rule 26(a)(1)(A)(i), Fed. R. Civ. P., and omits some diary entries which are relevant to plaintiff's claims or defenses. See Motion To Strike (Doc. #21) at 3. Defendant has not shown, however, that incompleteness constitutes a ground to strike a filing. On this record, defendant has not shown that the filing has no possible relation to the controversy or that it will prejudice one of the parties. Accordingly, the Court declines to strike it.

Alternatively, defendant asks the Court to require plaintiff to submit a more definite statement under Rule 12(e), Fed. R. Civ. P. See Motion To Strike (Doc. #21) at 4. Rule 12(e) provides that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e).

Plaintiff's filing is not a "pleading to which a responsive pleading is allowed." Fed. R. Civ. P. 12(e). Accordingly, the Court declines to require plaintiff to provide a more definite statement. See, e.g., Ramos Oil Recyclers, Inc. v. AWIM, Inc., No. 2:07-cv-00448-GEB-DAD, 2007 WL 2345014, at *4 (E.D. Cal. Aug. 16, 2007) (denying motion for more definite statement of affirmative defenses because no responsive pleading permitted); Travelers Indem. Co. of Conn. v. Presbyterian Healthcare Res., 313 F. Supp.2d 648, 653 (N.D. Tex. 2004) (Rule 12(e) inapplicable where court does not order responsive pleading to answer and affirmative defenses).[18]

---

[18] Again, defendant acknowledges that by its terms, Rule 12(e) applies to "pleadings." Motion To Strike (Doc.#21) at 3 n.12. Defendant asserts that authority exists "for granting motions to strike under circumstances similar to these," but again cites no such authority. Id.

### III. Motion For Summary Judgment (Doc. #13)

Plaintiff asserts that in June and July of 2016, defendant discriminated on the basis of race and gender and retaliated because she complained of discrimination. See Employment Discrimination Complaint (Doc. #1) at 2-5. Defendant seeks summary judgment on grounds that plaintiff cannot establish a prima facie case of discrimination or retaliation.

#### A. Legal Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Hill v. Allstate Ins. Co., 479 F.3d 735, 740 (10th Cir. 2007). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Liberty Lobby, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence in support of a party's position. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Nahno-Lopez v. Houser, 62 5 F.3d 1279, 1283 (10th Cir. 2010). Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which the nonmoving party carries the burden of proof. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). To carry this burden, the nonmoving party may not rest on the pleadings but must instead set forth specific facts supported by competent evidence. Nahno-Lopez, 625 F.3d at 1283.

In applying these standards, the Court views the factual record in the light most favorable to the party opposing the motion for summary judgment. Dewitt v. Sw. Bell Tel. Co., 845 F.3d 1299, 1306 (10th Cir. 2018). The Court may grant summary judgment if the nonmoving party's evidence is merely colorable or not significantly probative. Liberty Lobby, 477 U.S. at 250-51. Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

The Court recognizes that pro se litigants should not succumb to summary judgment merely because they fail to comply with the technical requirements involved in defending such a motion. See Woods v. Roberts, No. 94–3159, 1995 WL 65457, at *2 (10th Cir. Feb. 17, 1995); Ward v. Lenexa, Kan. Police Dep't, No. 12-2642-KHV, 2014 WL 1775612, at *2 (D. Kan. May 5, 2014); Long v. Morris, 485 F. Supp.2d 1247, 1250 (D. Kan. 2007). The Court has therefore searched the record to determine whether genuine issues of material fact preclude the entry of summary judgment on plaintiffs' claims. See, e.g., Ward, 2014 WL 1775612, at *2; Drape v. UPS, Inc., No. 12-2172-KHV, 2013 WL 6804214, at *2 (D. Kan. Dec. 23, 2013); Long, 485 F. Supp.2d at 1250.

**B.    Facts**

Unless otherwise noted, the following facts are uncontroverted, deemed admitted or construed in the light most favorable to plaintiff.[19]

---

[19] The Court includes only those facts which are material to the decision herein and disregards any facts which are not supported by the record. The Court does not consider conclusory factual and legal assertions.

For less than two months, plaintiff worked for defendant, Labor Source, LLC d/b/a One Source Staffing and Labor.[20] Defendant's Memorandum (Doc. #14) at 2, ¶ 2. During that time, plaintiff worked for six of defendant's clients. Id. Regarding plaintiff's work performance, defendant did not receive any negative feedback from clients. Id. at 2, ¶ 8-9. Defendant never terminated its working relationship with plaintiff. Id. at 2, ¶ 5. If plaintiff were to come to defendant's office ready and willing to work, nothing in her personnel file or record would prevent defendant from referring her out to work. Id. ¶¶ 8-9.[21]

Plaintiff last worked for defendant in late May of 2017, when she worked on a job in St. Louis, Missouri. Affidavit of Latreissa D. Randolph at 1, attached to Notice (Doc. #18). While in St. Louis, her lead boss Rios Anastacio "became very unprofessional" and caused plaintiff to distance herself from him. Id. Plaintiff and Anastacio would hang out in St. Louis on days when they were off work, and they discussed family matters. Id. One day, Anastacio saw plaintiff and other crew members talking to a past crew team. Id. Anastacio asked them to stop talking because the past crew team had gotten him kicked off another job. Id. Plaintiff thought it was not a valid reason for her not to talk to them, and she started distancing herself from Anastacio. Id. One day,

---

[20] Defendant's statement of facts does not describe the nature of its business. See Defendant's Memorandum (Doc. #14) at 1-3. According to the affidavit of Noe Marquez, office manager for defendant's Kansas City location, defendant is a staffing company that places workers at various client sites. See Affidavit Of Noe Marquez ¶ 2, Exhibit B to Defendant's Memorandum (Doc. #14). Defendant generally places the workers in unskilled roles such as janitorial services and factory work. See id. Defendant pays the workers and receives compensation from its clients. See id.

[21] Defendant asserts that it never took adverse employment action against plaintiff or removed her from a work ticket or work order. See Defendant's Memorandum (Doc. #14) at 2, ¶ 4 (citing Marquez Affidavit ¶ 12). Whether defendant took adverse employment action against plaintiff constitutes a legal conclusion. Moreover, as discussed infra, plaintiff presents affidavit testimony that defendant took her off a work ticket and/or removed her from a work order.

the head boss, i.e. contractor, could not find Anastacio and asked plaintiff to help lead the crew. Id. When Anastacio came, he snapped at plaintiff and said, "Who told you to do that! I am the Boss u [sic] do as I say!" Id. Continually that day, Anastacio was unprofessional toward plaintiff. Id. During the last few days in St. Louis, Anastacio stressed plaintiff out and "made things real confusing." Id.

In June of 2017, plaintiff called the lead boss with whom she had worked on at least two previous jobs.[22] Id. Plaintiff did not get anywhere with that conversation, so she called defendant.[23] Id. Plaintiff did not get anywhere with that call either.[24] Id.

Finally, plaintiff went to defendant and asked to speak with the office boss.[25] Id. Plaintiff told the boss about Anastacio and said that she felt that defendant had discriminated against her. Id. They talked for about 20 minutes. Id. The boss told plaintiff "about going out to work" and asked with whom she liked to work. Id. Plaintiff mentioned a lead named Dominique. Id. The boss said that Dominique did not need anyone. Id. Plaintiff said that she did not care where she worked, i.e. she just wanted to work. Id. Plaintiff understood that the boss was going to find work for her. Id.

Plaintiff left the boss's office and went to the lobby, where she saw an employee with whom she had previously worked. Id. Plaintiff talked with the employee for about an hour. Id. During the conversation, the employee received a call from Dominique. Id. The employee told Dominique

---

[22] Based on context, it appears that this was another lead boss, i.e. not Anastacio.

[23] Plaintiff does not specify with whom she spoke when she called defendant.

[24] Although the affidavit is not clear, based on context, it appears that plaintiff may have been complaining about her experience with Anastacio in St. Louis.

[25] Plaintiff states that she does not know the name of the office boss.

that plaintiff was there. Id. Dominique asked plaintiff to come to work at his job assignment. Id. Plaintiff replied that the boss had said that he did not need help. Id. Plaintiff told Dominique to call the front desk and talk to the boss about having plaintiff work on his job. Id. Plaintiff does not know if Dominique made the call. Id. Finally, someone named Ulises[26] asked plaintiff and the employee to come to the front desk. Id. Ulises wrote down their names and said that he did not need women. Id. Ulises asked plaintiff if she was mad. Id. For hours, plaintiff waited to work but it did not happen. Id. at 2. Around 4:30 p.m., she caught the bus home. Id.

In mid-June of 2017, plaintiff took a male friend to defendant's office to find work for him. Id. Plaintiff did not plan on working. Id. They arrived by "early noon" and the friend put his name on the work sheet. Id. In addition to plaintiff and her friend, around five people were in the lobby. Id. About five guys came in and went out on a work ticket. Id. Plaintiff's friend could not go on the work sheet with them.[27] Id. Finally, plaintiff told her friend that she would go out with him on a work ticket. Id. An employee named Grace came in with others and asked plaintiff if she wanted to work. Id. Plaintiff said yes. Id. Grace went to the front desk and came back and said that plaintiff could not work because Grace's friend wanted to work. Id. Plaintiff and her friend ended up sitting around for half a day and not working, while others came in and left on a work ticket. Id.

---

[26] Based on context, it appears that Ulises may be the name of a person who was working at the front desk.

[27] The record does not reflect why the friend could not go on the work sheet with them.

-15-

**C. Analysis**

**1. Discrimination Claim**

Plaintiff asserts that defendant discriminated against her because of race and gender. Defendant asserts that plaintiff cannot establish a prima facie case of discrimination.[28] See Defendant's Memorandum (Doc. #14) at 4-6. The burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), applies to plaintiff's claims. Plaintiff bears the initial burden to establish a prima facie case, i.e. that (1) she belongs to a protected class; (2) she suffered adverse employment action; and (3) the adverse employment action occurred under circumstances which give rise to an inference of discrimination. See McDonnell Douglas, 411 U.S. at 802; Hysten v. Burlington N. & Santa Fe Ry. Co., 296 F.3d 1177, 1181 (10th Cir. 2002). The burden then shifts to defendant to provide a legitimate, nondiscriminatory reason for the action. McDonnell Douglas, 411 U.S. at 802. If defendant successfully does so, the burden shifts back to plaintiff to show that defendant's stated reason is a pretext for discriminatory intent. Id. at 804.

Defendant asserts that plaintiff cannot establish the second element of a prima facie case, i.e. that it took adverse employment action against her. See Defendant's Memorandum (Doc. #14) at 5-6. Specifically, defendant asserts that it never "reprimanded, terminated, demoted, or refused [plaintiff] the opportunity to work for a client." Id. Defendant asserts that plaintiff remains in good standing and is eligible for job referral and placement. Id. at 6.

---

[28] Defendant asserts that plaintiff only complains of race discrimination. See Defendant's Memorandum (Doc. #14) at 4. Read broadly, the complaint also alleges gender discrimination. See, e.g., Employment Discrimination Complaint (Doc. #1) at 3 (alleging discrimination based on "race or color, which is African Black (being a woman)").

For purposes of discrimination claims, adverse employment action requires "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Daniels v. UPS, Inc., 701 F.3d 620, 635 (10th Cir. 2012) (emphasis omitted) (quoting Piercy v. Maketa, 480 F.3d 1192, 1203 (10th Cir. 2007)). Not every perceived indignity rises to the level of adverse employment action. EEOC v. C.R. England, Inc., 644 F.3d 1028, 1041 (10th Cir. 2011). A "mere inconvenience" or alteration of job responsibilities does not qualify as adverse action. Piercy, 480 F.3d at 1203 (no adverse action regarding shift-bidding policies where all shifts had similar duties and responsibilities).

Here, plaintiff presents affidavit testimony that on two occasions in the summer of 2017, she reported to work and defendant sent others to work while she waited for hours and did not receive a work assignment. Affidavit of Latreissa D. Randolph at 1-2. Although defendant did not address this issue in its statement of facts, the affidavit of its office manager states that although defendant cannot guarantee that workers will receive job placements, it is "rare" for workers who show up on time to not receive job assignments, especially those workers who have not received negative feedback. Marquez Affidavit ¶ 3. Furthermore, worker demand is "especially high" in the summer. Id. Construed in the light most favorable to plaintiff, a jury could reasonably conclude that defendant's failure to send plaintiff on work assignments constitutes adverse employment action. See, e.g., Drape, 2013 WL 6804214, at *11 (fact question whether job assignment that resulted in less opportunity to work overtime constituted adverse employment action); Trice v. Infinity Staffing Solutions, Inc., No. 1:15-cv-3401-WSD, 2017 WL 3499035, at *7 (N.D. Ga. Aug. 16, 2017) (reduction in hours constitutes adverse employment action); Anderson v. Boeing Co., No. 02-CV-

0196-CVE-FHM, 2006 WL 2990383, at *20 (N.D. Okla. Oct. 18, 2006) (alleged failure to train resulting in fewer overtime hours constituted adverse employment action). Defendant is not entitled to summary judgment on this ground.

### 2. Retaliation Claim

Plaintiff asserts that defendant retaliated against her because she complained of discrimination. Defendant asserts that plaintiff cannot establish a prima facie case of retaliation. See Defendant's Memorandum (Doc. #14) at 6-8. Again, the McDonnell Douglas framework applies to plaintiff's claim. See Daniels, 701 F.3d at 638. To establish a prima facie case of retaliation, plaintiff must show that (1) she engaged in protected opposition to discrimination; (2) she suffered a materially adverse action; and (3) a causal connection links the protected activity and adverse action. See id. If plaintiff establishes a prima facie case, the burden of production shifts to defendant. If defendant offers a legitimate, nondiscriminatory reason for the action, the burden shifts back to plaintiff to demonstrate that the proffered explanation is pretextual.

Defendant asserts that plaintiff cannot establish the second element of a prima facie case, i.e. that she suffered materially adverse action. See Defendant's Memorandum (Doc. #14) at 7-8. For purposes of retaliation claims, a materially adverse action is one that might dissuade a reasonable worker from making or supporting a charge of discrimination. See VonLintel v. Eagle Commc'n Inc., No. 14-4125-KHV, 2016 WL 7179465, at *12 (D. Kan. Dec. 9, 2016) (citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006); Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ., 595 F.3d 1126, 1133 (10th Cir. 2010)). The purpose is to separate actions that are likely to deter victims from complaining about discrimination from "petty slights, minor

annoyances, and simple lack of good manners," which do not create such deterrence. Burlington, 548 U.S. at 68; see also Johnson v. Weld Cty., Colo., 594 F.3d 1202, 1216 (10th Cir. 2010).

For reasons stated above, construing the evidence in the light most favorable to plaintiff, a fact finder could reasonably conclude that the refusal to send plaintiff on work assignments constitutes materially adverse action. See, e.g., Luevano v. Wal-Mart Stores, Inc., 722 F.3d 1014, 1029 (7th Cir. 2013) (reduction of assigned hours constitutes materially adverse action); McCullen v. R D R, LLC, No. 5:06-cv-202-OC-10GRJ, 2007 WL 2071362, at *8 (M.D. Fla. July 13, 2007) (reduction in hours which reduces take home pay constitutes materially adverse action); Fulmore v. Home Depot, USA, Inc., 423 F. Supp.2d 861, 879 (S.D. Ind. 2006) (reduction of hours resulting in reduced compensation can constitute materially adverse action). Defendant is not entitled to summary judgment on this ground.

**IT IS THEREFORE ORDERED** that Defendant Labor Source, LLC's Motion For Summary Judgment (Doc. #13) filed March 5, 2018 is **OVERRULED**.

**IT IS FURTHER ORDERED** that Defendant Labor Source, LLC's Motion To Strike Plaintiff Latreissa Randolph's Notice Or, In The Alternative, Motion For A More Definite Statement (Doc. #21) filed April 3, 2018 is **OVERRULED**.

**IT IS FURTHER ORDERED** that Magistrate Judge James P. O'Hara evaluate whether mediation would be productive at this time.

**IT IS FURTHER ORDERED** that pursuant to the Order (Doc. #38) filed July 9, 2018, the deadline for discovery shall expire 30 days after the date of this ruling. Judge O'Hara shall schedule

a pretrial conference and set a deadline for the parties to submit a proposed pretrial order.

Dated this 11th day of September, 2018 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge
